**SMITH–JOHNSON STEAMSHIP COR-
PORATION, Libelant-Cross-
Respondent,**

v.

**UNITED STATES of America,
Respondent-Cross-Libelant.**

**No. 1755.**

United States District Court
D. Delaware.

July 2, 1964.

———◆———

S. Samuel Arsht, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Arthur M. Becker, Becker & Greenwald, Washington, D. C., for cross-respondent, Smith-Johnson Steamship Corp., Robert Lichtman, Washington, D. C., of counsel.

William J. Wier, Jr., Asst. U. S. Atty., Wilmington, Del., for cross-libelant.

LAYTON, District Judge.

This case arises from exceptions and exceptive allegations filed by the cross-respondent, Smith-Johnson Steamship Corp. (hereinafter Smith) in opposition to a cross-libel filed by the United States.

On November 3, 1954, Smith, then a Delaware corporation, voluntarily dissolved itself pursuant to 8 Del.Code, § 275. On November 16, 1956, Smith libelled the United States in this court to recover certain payments it had made under an allegedly invalid profit-sharing formula in a contract of charter hire with the United States. That suit is still pending.

On June 4, 1963, although fully aware of the suit in this court, the United States filed a separate libel against

Smith-Johnson in the Southern District of New York for amounts claimed to be due the United States from the same transaction as was involved in the suit earlier instituted in this court by Smith. Smith filed exceptions and exceptive allegations alleging that the court lacked jurisdiction because Smith did not exist as a body corporate, did not do business in the Southern District of New York, and had authorized no one to receive service of process there. On November 8, 1963, these exceptions and exceptive allegations were sustained in all respects and the libel was dismissed. On November 1, 1963, the United States filed the cross-libel now at issue here.

The original libel was based upon a contract whereby Smith agreed to charter vessels from the United States at a basic rate of $1,295,025.93 plus additional charter hire based upon a profit-sharing formula. Smith's libel alleges that Smith made a preliminary payment of additional charter hire under the contractual formula in the amount of $613,-395.52 but that under the underlying statute its liability for additional charter hire could not exceed $381,621.51 because of the different profit-sharing formula in the statute, and that, therefore, the United States owes Smith-Johnson the difference between these two amounts, $231,-773.81. The government's cross-libel contains three alternative causes of action:

(1) The underlying statute provides that rates of charter hire shall not be less than the prevailing world market. The contract called for $1,911,088.97 ($1,295,025.93 basic charter rate plus $616,063.04 profit-sharing). The world rate was $4,202,449.79. Smith-Johnson paid $1,908,421.25 ($1,295,-025.93 basic rate plus $613,395.52 additional charter hire) and thus owes the government the difference between the latter two amounts ($2,294,028.-54).

(2) The contract called for additional charter hire of $616,063.04. Smith-Johnson paid $613,395.52 and thus owes $2,667.72 more.

(3) If the profit-sharing arrangement in the contract was illegal, Smith-Johnson is liable for an amount in excess of or at least equal to the amount specified in the contract, $616,063.04, on the basis of a quantum valebat for the fair and reasonable value of the use of the ships.

This cross-libel is in all respects identical with the libel dismissed in New York except that it is a cross-libel and not a libel.

The exceptions and exceptive allegations now before me rest upon three grounds: (1) Smith lacks capacity to be sued as a body corporate. (2) The service of the cross-libel was invalid because Smith had no one authorized to receive service of process. (3) The dismissal in New York is res judicata.

8 Del.Code, § 278 purports to set forth the circumstances in which a dissolved Delaware corporation may sue or be sued. It provides:

"All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of three years from such expiration or dissolution, bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock, but not for the purpose of continuing the business for which the corporation shall have been established. With respect to any action, suit, or proceeding begun or commenced by or against the corporation prior to the expiration or dissolution and with respect to any action, suit or proceeding begun or commenced by or against the corporation within three years after the date of the expiration or dissolution, the corporation shall, only for the purpose of such actions, suits or proceedings so begun or commenced, be continued bodies corporate beyond the three-year period and until any judgments, orders, or decrees therein shall be fully executed."

186

The government contends that its cross-libel is part of the same suit which was instituted by Smith-Johnson prior to the expiration of the three year period and that, therefore, its cross-libel falls within the last sentence of § 278.

Smith construes each of the three causes of action in the cross-libel as being affirmative, rather than defensive, in nature; that is, they do not merely seek to reduce or extinguish Smith's recovery because of some other claim in favor of the United States, but they seek damages in excess of the amount prayed for by Smith. Smith concedes that the government should be permitted to reassert the same claims defensively through other pleadings, but contends that counterclaims or cross-libels may be part of the same "suit" for the purpose of § 278 only when they are defensive in nature.

The government does not dispute Smith's characterization of its cross-libel as being affirmative in nature. Rather, it takes the flat position that cross-libels or counterclaims, whether affirmative or defensive in character, fall within the last sentence of § 278 and are, therefore, not barred.

Thus, the precise question before me is whether a voluntarily dissolved Delaware corporation continues to exist for the purposes of an affirmative cross-libel or counterclaim interposed in a pending suit after the three year period specified in § 278 has expired. This question is one of corporate capacity and should be determined by the law of Delaware, the corporate domicile, even though the suit is in admiralty. American Transportation Co. v. Swift & Co., 24 F.2d 310 (2d Cir. 1928).

Smith's position is that the three year restriction on the right to bring suits contained in § 278, while not a statute of limitations per se, nevertheless, represents a public policy that all suits by or against dissolved corporations must be commenced within three years following dissolution and that by way of analogy with the great majority of cases interpreting statutes of limitations, an affirmative counterclaim or cross-libel cannot be filed after the period of the applicable statute of limitations has expired. I agree.

While § 278 represents a legislative policy declaring that all suits by or against dissolved corporations must be commenced within three years after dissolution, it is not, in itself, a statute of limitations. This clearly appears from the ensuing § 279 authorizing the Court of Chancery at any time, either before or after the corporation's affairs have been wound up,[1] to appoint a receiver to prosecute or defend suits by or on behalf of the corporation.

Nevertheless, while not a statute of limitations, it is a clear expression of a legislative policy normally[2] prohibiting the commencement of actions by or against dissolved corporations more than three years after their dissolution and, as such, by way of analogy justifies the application of decisions interpreting statutes of limitations.

It is settled law that affirmative counterclaims may not be instituted after the applicable period of the statute of limitations has expired for the reason that such claims are regarded as independent causes of action. Delaware Chemicals, Inc. v. Reichhold Chemicals, Inc., 35 Del.Ch. 493, 121 A.2d 913 (Ct.Ch. 1956); Di Norscia v. Tibbett, 11 Terry 118, 50 Del. 118, 124 A.2d 715 (Del. Superior 1956); United States v. Cummins Distilleries Corp., 166 F.2d 17 (6th Cir. 1948); see cases cited in note 1 of 3

1. Addy v. Short, 8 Terry 157, 89 A.2d 136 (Supreme Ct.Del.1952); · Melrose Distillers v. United States, 359 U.S. 271, 274 n. 4, 79 S.Ct. 763, 3 L.Ed.2d 800 (1959).

2. Cases involving suits against Delaware corporations dissolved for non-payment of taxes are, I think, distinguishable here because such dissolution is a revenue measure and, in any event, the corporation can be thereafter revived. Wax v. Riverview Cemetery, 2 Terry 424, 24 A.2d 431 (Del.Superior Ct.1942); Ross v. Venezuelan-American Independent Oil Producers Assn., Inc., 230 F.Supp. 701 (D.Del.1964).

Moore's Fed.Practice, Sec. 13.11. Under the circumstances here, I regard this cross-libel as an independent action falling within the prohibition of § 278.

It follows that Smith lacks capacity to be sued through the cross-libel now before this court. This conclusion requires that the cross-libel be dismissed and renders a decision of the res adjudicata and service of process points unnecessary. Whether the government will choose to press the subject matter of its cross-libel through a receiver under the provisions of § 279 is, of course, not before this court. I realize that such a procedure would put the government to much extra trouble but in view of its clear negligence in delaying the filing of its cross-libel for seven years after it was sued, it can hardly be heard to complain.

Order in accordance with this opinion.